Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, everybody. We have one case for oral arguments today. The remainder of the cases on today's docket have been submitted on the briefs and will be resolved on the briefs. Today's oral argument is in Harmonia Holdings Group 20-1538. Mr. English, I see that you have reserved four minutes of your time for rebuttal. Is that correct? Yes, your honor. Okay. You may begin, sir. Good morning and may it please the court. This court should reverse the claims court's judgment for three reasons. First and principally, the claims court erred by conflating two legal doctrines that this court has recognized to be separate. The hold at Harmonia satisfied the blue and gold waiver rule but still forfeited its solicitation challenge. Second, should the court decide to reach this issue in the first instance, it's clear that the agency should have allowed offerors to revise their entire proposal to address the fundamental changes that Amendments 9 and 10 brought about. Third and finally, again, should the court decide it needs to reach this issue, the claims court erred by holding that the agency reasonably evaluated Harmonia's proposal. Mr. English? Yes, your honor. This is Judge Wallet. I think for me the core of this is articulated on pages 15 and 16 of the government brief. The government says that, I'm quoting now with an ellipsis, there can be no dispute that after the agency denied it protest, Harmonia was aware of the other formal routes for pre-award protest and they say separately, Harmonia had adequate time to bring a formal protest or in the court of federal claims prior to the award of the contract. I have a couple of questions for you. Do you agree or disagree that you were aware of the other formal routes? Certainly we knew that GAO and the court of claims were available for pre-award protest, your honor. Okay. Second, do you agree or disagree that you had adequate time to bring a formal protest at the GAO or in the CFC? As it turns out, we did. There was a five-month delay, I believe after the denial of our agency-level protest before the award decision. Of course, that was the period of time that the government took to evaluate proposals. That was not known to us after the denial of the agency protest. Of course, the amendments that we challenged came about after proposals were submitted. The decision could have been made at any time. We filed this protest with the claims court within around 10 or 11 days after the award decision was made public. Our position is that we satisfied the blue and gold waiver rule with the formal agency protest that initially raised these grounds very specifically, gave the agency an opportunity to address them. It decided not to. We felt we had adequately satisfied this court's precedent in Comet and Bantam, where the court told offerors like Armoni exactly what you need to do to satisfy the blue and gold waiver rule. That You've answered my question. Let me ask you one other one, which is another 401k. That is on page 31 of the government's brief. The government says, quote, the cargo applications identified and explained in attachment E are what this contract is all about. They claim that you overlooked that purpose of the contract. If the cargo applications identified and explained in attachment E are not the purpose of the contract, then what is it? Overall, Your Honor, it's a development and operations and maintenance effort. The applications described on exhibit E, there's a list of 52 of them. It's part of the technology stack that the government intends the awardee to use. The question for us, or the problem in our estimation, is not that these applications were part of the technology stack, but the idea that was never revealed in the solicitation that we had to organize our staffing around four of 55 applications and got a significant weakness for not doing so. That's really the critical issue for us, not that these applications were part of the work we had to do, but four of 55 were somehow core, even though they were never identified as such at any point in the solicitation. This is Judge Reina. You argue on page 21 of your brief that the Court of Federal Claims erred when they combined the waiver rule and the diligent pursuit requirement. You say that in doing so that they fashioned the new rule. What exactly is that new rule that they fashioned? If I read Judge Smith's opinion, Your Honor, it was not only that an offeror has to timely file a formal protest at one of the three available venues, but then continuously litigate it through each of those venues in the federal court in order to preserve its solicitation challenge. It combined that diligent pursuit requirement that the court has used to test the interested party's status of non-bidders. Here, Harmonia was a bidder. It actually submitted a responsive proposal. Our view is that where the blue and gold waiver rule has generally been described as how you preserve a solicitation challenge, the claims court's rule would require continuous litigation through multiple forums to preclusion, essentially, at the federal court level. That's never been required, particularly of an actual bidder, in any of the court's blue and gold cases. What do you think the Court of Federal Claims is saying? That you waived the issue or that you forfeited a cause of action? My reading of his opinion, Your Honor, was that we waived the solicitation challenge and forfeited the argument by virtue of the fact that we filed one formal protest raising this issue and didn't proceed through GAO and even to the Court of Claims prior to award. Mr. English, this is Judge Schall here, if I might ask you a question. Certainly, Your Honor. In looking at the case, in looking at blue and gold fleet, the Court noted that one of the doctrines that's been recognized in this area is the doctrine of latches and equitable estoppel, correct? Yes, Your Honor. And that's at page 1314. I didn't see in the decision of the Court of Federal Claims or in your briefing or the government's briefing any reference to the doctrine of latches or equitable estoppel. And it seems to me that it may be an appropriate area to look into in this case because otherwise we're sort of floating at sea without any real legal doctrine to bind us. On the one hand, you say correctly that you met the initial requirements of blue and gold fleet by filing the agency-level protest. That's certainly true as laid out in Banham and so forth. On the other hand, there was a period of time here that passed and the government says that important policy considerations compelled you to move forward sooner than you did, and that's basically what I think the Court of Federal Claims picked up on. But it does seem to me to be an appropriate area to look at the doctrine of latches. And if that's applicable, has that been addressed here? It certainly wasn't an issue that Judge Smith raised in his opinion, Your Honor. I think that also implicates, at least to a certain extent, potentially the SCA holding from the Supreme Court that Judge Rana addressed in his dissent in the Inerso case. And to the extent that latches can apply, and I know Your Honor is speaking to equitable issues, but to the extent latches can apply when we have a stated statute of limitations. Let me ask you this. I'm sorry to jump in, Mr. English, but time is sort of fleeting here, and I understand what you're saying. But the question I did want to ask you with regard to latches is, assuming latches is pertinent in this area, and via the language of blue and gold fleet it is, can we decide the latches issue here, or should it not be returned to the Court of Federal Claims? Because it's inherently fact-bound, and there have been no fact findings on the issues of latches, namely reasonableness of delay and prejudice. Would it not have to go back to the Court of Federal Claims if we felt, and that's an if, that latches was the appropriate way to look at the case? I think that's absolutely right, Your Honor. The Claims Court decided we met blue and gold, but still forfeited the claim for lack of diligent pursuit. It did not address latches at all. And I think a couple other policy points are important here. Mr. Kerr and his colleagues at the Department of Justice have been incredibly effective at using blue and gold to defend challenges that most of us on this side of the ledger don't believe, or even solicitation challenges. There's the policy issues that affect the government customer, but contractors know that rule, too. And so there are often times where contractors are going to need to file what amounts to protective solicitation challenges if they see anything that might pop up as an issue. And the least expensive and most cost-effective way to do that is with an agency level protest. And if there's an issue like this where it turns out there's a long delay after the denial and before the award, I think Judge Reyna's dissent in Inerso is also instructive there. I think it's not by finding waiver under the blue and gold rule, but by addressing it at the injunction factors. You factor it in when you're talking about the balance of harms. Factor it in when you're talking about the public interest, which is where I think these equitable issues, the extent we're talking about equitable latches or equitable estoppel would really come into play is at the relief stage of the analysis and not on the front end dealing with waiver. But, Counselor, you didn't make any of these arguments below. About latches? I believe that there was an argument about latches. There was a passing comment in one of the briefs that we addressed simply by saying that the lack of argument... I'm asking whether you raised the issue. Of latches? No, Your Honor. No, Your Honor. Well, we addressed a comment in, I believe it was the intervener's brief. He raised latches. I don't believe the government did. We simply noted that latches doesn't apply in the face of the statute of limitations, but it was not addressed in any material way beyond those a couple of comments in the briefing at the claims court level. If the court has no more questions for me, I see that I'm in my rebuttal time. Okay. Let's hear from the other side. Thank you, Your Honor. Counselor Kerr? Yes. You're going to... You have 10 minutes, correct? That's correct, Your Honor. Arguing on behalf of the U.S. government. Okay. Yes, that's correct, Your Honor. Thank you. May it please the court, the purpose of the Blumengold waiver is to further expeditious resolution of pre-award protests. Pomona had four and a half months from the denial of its agency protest to the award of contract to renew its pre-award protest at either the GAO or the Court of Federal Claims. Mr. Kerr, excuse me, this is Judge Schall here. Let me ask you this, a couple of questions. First of all, assume for the moment that instead of going into or instead of lodging the agency level protest, which it did, Blue... Harmonia had gone right on the same day instead to GAO and then had gotten an adverse GAO decision at that point. And then the contract had been awarded on December 6th and everything else had played out as it did. Would you be still here today making your argument or would you say that since they went to GAO, they did enough? Your Honor, if I could ask a clarifying question, when you say everything played out as it did, you mean there's still the four and a half months? Yes. Yes. Correct. Correct. Well, I mean, there are a lot of different variables, but I believe we'd be making the same argument because Harmonia would still have one more of what this court has described as the formal protest. Okay. Let me ask you, let me be rude if I couldn't interrupt you here, because I just had a couple of thoughts and I apologize for jumping in in the middle of your answer there. But assume for the moment that we have the same facts that we have here and that instead of waiting until, oh, when it did after the award of the contract, it had come in on March the 1st. Harmonia had come in on March the 1st with a protest in the Court of Federal Claims. Well, if we have the same facts in this case, except they come in at March the 1st, that's still, I believe, three months in between the denial of the agency protest and them trying to renew it. Okay. And based on the principles in this court's other holdings, that's more than an adequate opportunity to renew its protest. Okay. Now, let me just ask you, and then I'll yield to any other of my colleagues who have questions, as you heard and as you know, in Blue and Gold Fleet, we recognize the applicability of the doctrine of latches in this area of the law. And can we decide the issue of latches if we think it's appropriate, or would a latches inquiry in this case require a remand to the Court of Federal Claims to look at the inherently factual issues that are involved in the doctrine? Well, Your Honor, I agree with Mr. English that latches came up because it is one of the pillars of Blue and Gold, one of the principles that was relied upon. If the Court were not applying the Blue and Gold waiver and only applying latches, I believe there would have to be a remand for that factual determination. Although, thinking about it now, there are a lot, you know, the facts are clear on the record as far as... But you agree, though, that it appeared to me that however latches goes in this case, whether it would cut in favor of harmonia or whether it would cut in favor of the government, it does appear that the issue wasn't addressed below, that Judge Smith simply said, well, I'm going to rule this way because it supports the policies behind Blue and Gold Fleet and the related cases. Yes, Your Honor, Judge Smith's opinion didn't deal with latches directly, but it did come up in the briefing because latches is one of the principles underlying Blue and Gold, as is clear in the Blue and Gold decision. One of the other principles underlying that decision is the patent ambiguity doctrine. And under that doctrine, a party is required to not only raise what it feels is the wrong interpretation by the agency, but they must get a result. They must get an answer. They must diligently pursue their interpretation if they don't want to waive that argument. Another basis for Blue and Gold was the GAO's rule. And GAO, in this case, has a rule that required harmonia, if it wanted to renew its protest after the agency denied it, to file at the GAO within 10 days. And the difference between 10 days and four and a half, or I guess the total was five months, would make... Supposing, let me... You raise a good point there, Mr. Kerr. Supposing harmonia had followed up, and within 10 days of December 6th, which I think is the date the agency denied the protest, Mr. English had hustled into GAO. And a month later, say on January 6th or January 10th, he'd gotten a denial of his protest from GAO. Would you say at that point he had done enough, or would you still be saying it was wrong for him to wait until the award of the contract in April to file his protest with the Court of Federal Claims in May? Well, Your Honor, the purpose of blue and gold is finality. So our position is that that's not enough. If there is an opportunity to continue to protest, and the protest still exists, that it hasn't been resolved by the GAO, even a denial might resolve the protest if the protestor is satisfied. Where in blue and gold do you see this requirement of finality? Isn't blue and gold really a case that stands on preserving the initiative to address it later in your protest? Well, I mean, perhaps not. Is there a requirement under blue and gold that you file your pre-award protest before there's the award, and that you pursue it and conclude it before the awards are made? Your Honor, when I said blue and gold, perhaps I spoke too specifically. I meant when you look at all the case law, including Bannum and Cummins, there is a description that the notice to the agency—I'm sorry, I got ahead of myself—the principle of bringing a protest to the agency is not just notice. It's to engage the agency in the resolution, and that indicates that it's the final resolution that's important. In fact, in Cummins, the court even says if the agency doesn't give the release that the protestor is looking for, then they can go to the Court of Federal Claims under the Tucker Act. If a protestor is allowed, after the denial of the agency protest, to just sit and wait and see if it gets an award, and then take a second bite of the apple, all of the same things that B&G is trying to avoid, all of the things that B&G, that blue and gold, is trying to prevent come into play, including the waste of the agency's resources by working on this protest or on this solicitation for four and a half months, only to have, you know, sort of the sleeping dying awake again when Harmonia tries to renew its protest. B&G talks a lot about not letting protestors take advantage of the agency and of the other bidders in this way. I was referring to this. Do you believe that this court's decision in SIRSO supports what you just got through telling us? Well, yes, Your Honor. In fact, SIRSO helps us in that it indicates the high standard that protestors are held to. In that case, it was deemed a waiver based on a disclosure that was likely to occur. It wasn't even as clear as what we have in this case, where, you know, they're protesting against an amendment. So is SIRSO about preserving an issue for later litigation? Was it about standing or waiver? It was about waiver. I don't believe the issue of preserving came up in the SIRSO. But the concept that approached... So are you saying does waiver apply here or not? Waiver does apply. The Blue and Gold Waiver, the principles behind the Blue and Gold Waiver apply here. And the principles defeat Harmonia's position that it can wait more than half a month. What was waived? The right to later assert an issue or was the entire cause of action waived? The right to assert the pre-award claim dealing with the amendment. So if that's the case, then why is there this... Why do we have this timing requirement? If all we're talking about is waiving at the pre-award level, rather about preserving an issue at the pre-award level, and we're talking about waiver, then what is the rule about someone having to act with deliberation come in? Well, the Court of Federal Claims, looking at all of the eighth law dealing with the Blue and Gold Waiver, concluded correctly that a protester cannot sit on its right, sit on its claim of a pre-award issue. Right. So it must file a protest. If it's got a pre-award issue, it must file its protest at a pre-award frame of time, right? Yes, that's correct, Your Honor. Where in Blue and Gold do we see this requirement that you have to act within a certain amount of time to not waive the issue? There's no case directly on point. So there's no case saying that Harmonia has this indefinite period of time. Is there a regulation? Well, the statute that gives the Court of Federal Claims jurisdiction recognizes the need for expeditious resolution of pre-award protests. And if that resolution isn't an ultimate resolution, then that statutory mandate is undermined. There's a statute of limitations that imposes at least a four-month time period in order to bring your protest. Is that what you're saying? What statute is that? Not a statute of limitations. The Tucker Act that gives the Court of Federal Claims jurisdiction over bid protests recognizes that these must be resolved, especially pre-award, in an expeditious resolution. In an expeditious fashion. And you're saying that in this case, it was an expeditious. Four months was not expeditious. That's correct, Your Honor. Four months was not expeditious. Just like 2.5 months, or two months, I'm sorry, in CGI wasn't diligent enough. And again, the DAO has a rule that says it has to be brought within 10 days. And this Court has relied upon DAO rules to harmonize. Is there any evidence in the record that harmonia meant to abandon its claim? If we're saying waiver is what applies here, what's the evidence that harmonia meant to abandon its claim? Well, it didn't raise it for four and a half months. It could have raised it at the DAO in 10 days, or it could have raised it at the Court of Federal Claims, as this Court pointed out in Banham. If it doesn't get the relief from the agency it wants, it can raise it at the Court of Federal Claims. By not raising it for four and a half months, or five months, pardon me, when all of the case law points, and the... You mentioned comments as one of those cases, correct? That's correct, Your Honor. But that's a standing case, isn't it? Comment is a standing case. It's not a waiver. Yeah. But comment is one of the cases where this Court looks to be congruous with the DAO to harmonize the two processes, processes. Okay. Do my colleagues have any other questions? I'm fine. Judge Hall, fine. This is Judge Wallach. I'm fine. Okay. I think I heard you, Mr. Kerr. I heard the tone. So let's see what Mr. Shook has to say. Okay. Thank you, Your Honor. Yes, thank you. May it please the Court? This is William Shook for Deaf Technology, the dependent intervener. A couple of comments. I believe the footnote four in CGI addresses this issue of timeliness, where this Court said a longer delay than necessary may be a factor in the Court of Federal Claims declining to exercise jurisdiction. I think that's what Judge Smith did. That footnote goes on to say, for example, 28 U.S.C. 1491b3 states that, quote, in exercising jurisdiction under this subsection, the Court shall give due regard to the need for expeditious resolution of the action. And that is what the Court of Federal Claims and Judge Smith did in this instance. Mr. Shook, this is Judge Shull here. I have just one kind of a housekeeping question. I recall from the briefing that your company, or I should say your client, is now performing the contract. Is that correct? It is still performing. It is performing a bridge contract. The actual contract has not yet been awarded. Okay. And what is the time? Will that bridge contract keep going until this matter is resolved? We hope so, Your Honor, but that is up to the agencies. We have no control over that. Okay. Thank you. But that is a point that shows that this has not been an expeditious resolution because a year and a half later we are still discussing this. We, DevTech, in its cross-motion for summary judgment, did specifically have a section on latches. It was not just a brief reference to it, but it was a specific section that we believe coincides with the blue and gold cases for expeditious resolution. My problem with the harmonia, what would be the harmonia exception to all of this, is that bid protestors, disappointed bidders, or not disappointed bidders, but bidders that had problems and concerns with solicitation terms would file an agency-level protest, which is the least expensive means of protesting, of any term or condition that they disagreed with. If they got a negative decision, they could then do exactly what blue and gold counseled against, which was to lie and wait until the award decision went against them and then raise that very same issue at the Court of Federal Claims. Do you agree, Mr. Shook, that if, I guess what Mr. Keller was saying, for the government, do you agree that if harmonia, after it received the denial of its protest at the agency level, had, within 10 days, gone to GAO and gotten another denial, that it still, after that, would have had to proceed to the Court of Federal Claims in the pre-award stage rather than waiting until after award to protest? Yes, Your Honor, absolutely. I do recognize that had the award occurred immediately after the GAO decision, two days after the GAO decision, that as long as they were timely to file the protest at the Court of Federal Claims, they would still have been timely because they were actively pursuing their rights, and this Court has recognized that need. What harmonia has never explained, even though it's been raised both by DevTech and by the government, is why they waited five months. There's been no explanation, no justification as to why they didn't pursue it. They did exactly what... That might cut against them in a laches inquiry, correct? Correct, but I also believe that it cuts against them in the blue and gold for the expeditious resolution of the action. But the jurisdiction, the waiver, the limited waiver of sovereign immunity to sue the government as part of a bid protest is based upon the need for expeditious resolution of the action, and that waiver... Counsel, so what are the markers here by which the trial court is to determine whether somebody has moved with deliberate speed or not? You know, we know that the regulations don't give you a specific timing, but five months is too long, and Mr. Kerr was saying that perhaps 2.5 months is too long, too. What is the threshold here? Well, I think it was this court, then CGI, that said two and a half months was too long. The... It's a reasonableness standard for pursuing in the court. Filing a court of federal claims action is not as easy as filing a letter of protest to the agency, nor is it as easy as filing at the GAO, but it... So it may take longer than 10 days at GAO, but certainly would never take longer than 30 days. So what do you look at, the totality of circumstances? Yes, I think that would probably be the right test to say, what was their explanation for failure to expeditiously pursue? And that's the one fact, even though that fact has been asked, questioned, that Harmonia has never once responded to why they waited five months.  The court's calendar is filled with Harmonia cases, so they know how to file. This is not an inexperienced government contractor. In your mind, what's at issue here? Are we looking at waiving an issue, an issue that was not preserved, for example? Or are we looking at forfeiting the cause of action as a whole? I'm sorry, Your Honor, I'm not sure I understand the question. We're looking at what I consider to be... What Harmonia is arguing is for a loophole in the blue and gold holding to allow them to file an agency-level protest, the easiest of all protests to file, and then sit on their rights for an inordinate amount of time without explanation to raise it again and delay the ultimate award, which has still been... While they litigate, something that they could have easily litigated at that time. It's the final sort of positioned loophole that they are trying to create out of blue and gold. So I'm interested, why would they have to explain the wait, why they waited? Well, because this is under the totality of circumstances test, if you want to call it that, there could be a valid reason why a protester did not pursue within 10 days or 12 days or 15 days a court of federal claims protest. How about five months? Under no circumstances would an experienced contractor have five months to justify a delay in filing. I could see a very, very small business that did not have access to counsel, maybe a month, but even then, then turning around five months later, the court of claims procedures are more complicated, but not too complicated. Okay. Go ahead, sir. So like I said, as a private practitioner, I look at this and I go, if Harmonia is correct and I get to now file agency level protest on terms, I'm going to counsel my clients to do so. And then we'll wait to see if we win. And if we lose on that issue, I can delay it, particularly if I'm the incumbent, because the delay generally helps the incumbent because of being able to continue to perform. So it becomes a money-making decision. I'll wait and I'll continue to perform. And that's what the waiver of sovereign immunity specifically said should not happen of this expeditious resolution of the issues. I thank the honors for your time today. Okay. One last question. Did you, you didn't argue laches, correct? Before the court of federal claims? No, no, we had a specific section in our cross motion on laches as well as on blue and gold. Okay. We had a full section on it. Do my colleagues have any other questions? No, I'm fine, Jim. Okay, great. Let's go back to Mr. English. And Mr. English, I'm going to restore you back to your four minutes. Thank you, Your Honor. A couple of quick points, and I think it was in response to what you were getting at with a couple of your questions, Judge Reynolds, as it relates to waiver. Waiver has to be voluntary, knowing, and intentional in order to be effective. So to the extent blue and gold is even still good law, it is a waiver rule. And the case law that exists today tells offerors like Harmonia exactly what they have to do to meet it, file a timely pre-award protest in a formal setting. I think in Banham, the court balanced the respective interests by holding that the need for expeditious resolution was met by requiring one formal protest in one of the three forms. You say that blue and gold is a waiver case. Could it not be a forfeiture case? I'm sorry, Your Honor. Go ahead. I think of them synonymously. I mean, I think at its core, it probably is a forfeiture in light of some of the recent decisions from the Supreme Court. But it's always been couched as waiver. And a contractor that follows the law as it exists when it's engaged in this protest activity certainly could not be said just as a matter of course to have knowingly, intentionally waived its right to pursue a solicitation challenge. And this is not the situation that blue and gold was intended to address, where a protester plays both ends against the middle. We specifically raised our hand to the agency and said exactly what our issues were with respect to the solicitation. And it decided against us. And the rule that Mr. Kerr and Mr. Shook are lobbying for would put the burden of enforcing the government to get the solicitation right on the protesters. There's some balancing of these respective interests that has to go into that analysis. And as I mentioned earlier, as profoundly as the government uses the blue and gold— But that's not what caused you to wait five months, right? No. No, Your Honor. We filed our challenge after the—this was similar to a comment situation where the amendments came out after the proposals were submitted. We raised our challenge. They denied it. And we believed we had met the rule and the standard. And we didn't know when the decision was going to get—the award decision was going to be made. And so, again, from a policy standpoint, there are a lot of—in light of how pervasive the DOJ is in using the blue and gold waiver rule as a defense, contractors have to be very careful to make sure they raise any potential solicitation challenges early on to make sure there's no waiver. And as I said earlier, allowing one formal agency-level protest, which is exactly what Bannum said, to preserve the issue as opposed to requiring continuous litigation on the front end serves the policy purposes. Those formal procedures are in place, as the court said in Bannum, to ensure the expedition resolution. You may have preserved the issue, and therefore there's no waiver. I mean, obviously, you did file a pre-award protest. So whatever issues you raised there were preserved, but you waited beyond this unreasonable time, and maybe that's a forfeiture of your right to bring a cause of action based on those issues. Well, you know, Your Honor, certainly I think that aspect has not been developed at all in the record at the court of claims. And so if that's something the court would need to get into, I think there would have to be a remand to investigate that or develop the factual record for forfeiture. But the cases that have talked about this diligent pursuit are all cases where there's not an actual bidder. CGI that Mr. Kerr and Mr. Shook rely on involved a contractor that didn't submit a bid. But Harmonia did bid, and it preserved its ground, and it raised it timely at the court of claims after the award decision. I believe within the last year or two, there was some language in the NDAA that was meant to marry the 10-day rule at GAO up with a pre-award protest at the court of claims, and it hasn't been passed. We have the six-year statute of limitations. We have the waiver rule that says you've got to timely file it in a formal venue, and we've done all of that. I want to give my colleagues an opportunity to ask any questions, because your time's run out. Certainly. I have no questions, Judge Shull. This is Judge Wallach. I have no questions. Okay. All right. I think we have the arguments of the parties, and we thank the parties for their arguments, and this court will now stand in recess. The Honorable Court is adjourned until tomorrow morning at 10 a.m.